You may be seated. This is People v. Reynolds and our next case of the afternoon, 415-0572 for the appellant, Mr. Majors, for the appellant, is it Goble or Gable? Goble. Goble. You may proceed. May it please the court, counsel, this is a state appeal, of course, out of Sangamon County where the trial judge granted the defendant's petition to rescind statutory summary suspension based on his decision that it was an extraterritorial arrest. Excuse me. The state argued below that the two sections in the municipal code, I think it's called, it's Chapter 65-57475-748, applied. I'm sure the court's already familiar with those statutes. In a nutshell, it's where you have adjoining municipalities in the same county, that's the police district, and a police officer from either municipality would have full authority to make arrests. The trial judge disagreed, finding that you had to qualify. To use that, you had to come under one of the provisions of the criminal code, Section 107-4. I'm sure the court's familiar with that also. Of course, the state disagrees with that. We've cited this Barwick case, which was a policeman in West City who was looking for somebody. He went into Benton, which was an adjoining municipality, sees a guy that's obviously driving under the influence and arrests him. I think it was the 5th District upheld that in 2002, based on the two sections that the state relied on in this case. And the Haroon case, if I'm pronouncing that correctly, which was a police officer who was off duty and got into it with a burglar in an adjoining county, and they were willing to give him a disability pension, but not a line of duty pension, which was more money. But the appellate court found that this section, again, applied. Now, my opponent, I think, in a few minutes is going to get up and talk about speed traps. If you look at the argument section of the defendant's brief, the words speed trap appear on almost every page. Some pages, twice. It appears in the legislative debates. But nobody defines it, so I don't know what it is. If the problem here is a speed trap, then what is it? An officer sitting 100 feet outside of his jurisdiction running radar, is that a speed trap? I don't know what a speed trap is. I don't know what the legislature is talking about. Most of the defendant's brief is well written, but most of it relies on comments by legislators. And I asked Lee to cite an additional authority in the form of Judge Steigman's opinion, talking about, well, that's not the best thing to rely on. That the words themselves are the best thing to rely on to determine what the intent of the legislature was. Defendant's second argument in their responsive brief is that, well, even if the state is right, there wasn't enough evidence to show here that this occurred in Springfield. This case started off with the defendant saying, you were outside your jurisdiction, you had no authority. Then the Assistant State's Attorney came in and said, well, look at these two statutes, Judge. Then the defense went and said, well, you haven't established that it was in Springfield. A lot of these cases you'll find that seem to support the defense actually was in an unincorporated area. Not adjoining municipalities, but in the country. And, of course, our argument is no good in the country. Our argument is only good if the municipalities share a boundary. We have responded with all the questions and answers to Chief, I think it's Cathers, and the defendant about being in Springfield. In addition, there were several maps introduced into evidence. And five and six were introduced into evidence, and clearly five shows a boundary there. It's a jagged boundary, which obviously delineates between Springfield and Southern View. The last argument by the defendant is, well, combined with two and three, you should decide this. Well, that's all right with me. If you want to decide whether or not these two municipalities are adjoining or not, that's fine with me. But I think a better practice would be to send it back to the trial judge for his determination. And they say they want you to decide whether or not Ms. Reynolds refused. And our response, again, is this is a factual matter. This should be sent back down to the trial judge to determine a factual matter. And they say, well, you can affirm for any reason supported by the record. And that's true. There's cases, plenty of cases that say that. But most of those cases, as the court knows, don't concern differing views of what the facts were. Any questions? No, thank you. Mr. Kogle? May it please the court? Counsel. The ambiguity here comes from the fact that we have one statute that uses the term police district and doesn't use the term primary jurisdiction. And we have another statute that uses the term primary jurisdiction and doesn't use the term police district. And these statutes were enacted in the same public act. And if they had meant to use identical words, they could have. They could have used the same word. And if they wanted these words to be synonyms, they could have included definition section in one of the other statutes to say that these two words or two phrases mean the same thing. And they didn't do that. And the fact that Illinois trial court judges have struggled with the interpretation of these statutes is one indication of the ambiguity. And the fact that the interpretation urged by the state would render other statutes in the criminal code absurd and create chaotic results is a further indication of their ambiguity. And I want to touch on that for a moment because that was the one that really drove the point home for the trial court judge. He asked the prosecutor a question. He said, so you're telling me that a Southern View police officer can take its Southern View squad car and drive it out on Jefferson Street and write seat belt tickets in Springfield? And the state's attorney responded, yes, your honor. And the trial court recognized the absurdity of that interpretation and turned at that point to the legislative history. Counsel, would it be fair to say that when we're looking at 5-7-4-7, that they're talking about these connecting areas versus when we're looking at 5-107-483, they're talking about anywhere in the state. And so I don't really understand what you're saying the conflict is. There are three interpretations of that statute. And their position is that 7-4-8 applies. The trial court had an interpretation. Let me start with the states. The state says these two words mean the same thing. The trial court said, no, you need 7-4-7 to be interpreted along with 107-4 so that when one of the factors of 107-4 applies, then an officer can step across the adjoining jurisdiction. And then the middle interpretation, which I referred to in the brief as the third interpretation, gives meaning to that second sentence of 7-4-8. And that sentence, because it says the police of any municipality shall have full authority and power to go into any part of the district. Right, the district. That's what I'm saying. I don't really see the relevance of having to come up with the three different interpretations because I guess what I'm saying is, doesn't 5-7-4-8, doesn't that apply when you're talking about connecting? And then 5-1-0-7-4-8-3 talks about anywhere in the state. So a Macon County police officer or a Decatur police officer in Chicago, because he has become personally aware of a felony or has been asked to come and assist, that seems to apply to that situation. Where what we have here is a district as defined within the statute, these connecting municipalities. And if we choose that interpretation, then I think it's fair to recognize the second sentence of 7-4-8, which says, for these purposes, the mayor and the chiefs of police therein shall use the police forces under their control. So to give meaning to that second sentence, the word and, mayor and chiefs, we assume that that should have meaning. Shall use, we assume that that should have meaning. The cases, we have to give meaning to that. So that recognizes that there is an additional interpretation to give meaning to that. Does it mean that they can go without the mayor's knowledge, without their chief's knowledge? Can they go across the district without permission? What that means is, Officer Catters can leave Southern View and drive up to the airport and set up shop and start, without anyone in Springfield giving him permission, without anyone in Springfield knowing, without his own police force, without his own mayor knowing, that he can do that. And the answer to that is that would be absurd. That's not what the second sentence of that statute implies. And you look at what that does. You look at the DUI statute. The DUI statute says if an officer arrests somebody for DUI and that person pays the DUI fine $750, $350 of that goes to the municipality that wrote the ticket, not the municipality in which it occurs. And we recognize that that would be an absurd result also. And then when you recognize that absurdity and you say, well, let's look at the evolution of the statute and we look at where that statute started pre-1995. Because the state cited this case that says, please don't look at the comments from the legislators and don't look at the evolution of this statute, because once we get to that point, the state loses. Because the legislators' comments were clear and the evolution of the statute lets us know that that result, which is that a Southern View officer can drive up to the airport or that a Chatham officer can drive over to anywhere that he wants in the city, that's not what was recognized. What makes sense is that sometimes officers, well, for the most part, officers stay within their own municipality. Sometimes under 107-4, they can leave their municipality and go anywhere they want under those four circumstances, right? So it's anywhere they want within those four limitations. Sometimes there's going to be intergovernmental agreements, formal agreements. De Vernon and Pawnee, for example, may agree to share an officer and they're going to have a formal intergovernmental agreement under that statute. And then sometimes under 7-4-8, when you have adjoining municipalities, you're going to have an informal agreement that involves the mayors and the chiefs of police where they say, as between us, we don't have to have a formal intergovernmental agreement that's going to be voted on the way it has to be voted on. It's going to have those things that the statute requires for intergovernmental agreements. We're just going to have an informal discussion between the mayors and the chiefs that how about we cooperate in this area on this day. So your position is that if they had brought in evidence that there was this informal agreement, then you would lose? Well, I would lose under that second interpretation. My point is that any statute that has three possible interpretations is ambiguous. And if it's an ambiguous statute, a fair thing to do is to look at the evolution of the statute and look at the legislative history. And under the evolution of the statute and the legislative history, I win. Under that second interpretation, if the officer had said, yeah, the officers in Springfield know I'm here, my chief knows that I'm here. What happened, though, is this officer claimed that he didn't know he was in Springfield. He said that he thought he was in Southern View, even though he wasn't. Now, how he wasn't or why he wasn't, the facts aren't there. But for that scenario to have been the true intent of the legislator is not the true intent. Well, I mean, I agree that we have to look at it in conjunction with each other. But the thing about it is this section starts out, the 5-7-4-8, starts out talking about the police and the police district shall have full authority and power as peace officers and may go into any part of the district. And so it seems to me that you're reading in things that are not there in terms of this statement that the chiefs of police and the mayor shall use the police forces under their control anywhere in the district. I don't see anywhere in that language that requires some type of agreement or something to document that it's okay for my police to go into your area. I don't see that. Well, the phrase that I used in my brief was advice under the advice and consent. And I don't see that either. And those words are not there. However, if we give any meaning at all to that second sentence, then there has to be some meaning given to the fact that we care about the mayors and the chiefs of police to include them in that provision. The bottom line is if this court finds ambiguity, and it sounds like Your Honor is not leaning that direction.  I work hard. But I'm open. If the court finds ambiguity, then it turns to the legislative history and I win. If the court does not find ambiguity, then the court moves on to the second of my two issues. And the second of the two issues is whether there was in fact evidence that the officer was within the municipality of Springfield, within Springfield proper. And the state filed its motion to reconsider. And at the hearing, I pointed out that there was an assumption that the officer was in Springfield. But there was no evidence that the officer was in Springfield. And the state made no motion to reopen the evidence or introduce any additional evidence. Was there a reasonable inference that he was in an adjoining municipality? There isn't. And the reason for that is when it was pointed out to the court that there are, within the city of Springfield, unincorporated pockets all over the city. And the court said, quote, you are right. Let me see if I can find it. No, he says you're probably right. It's possible he could have been in an unincorporated portion of Springfield because there are those areas. My mother-in-law lives in one, but I'm not going to decide it based on that. So he didn't make a finding because he said it's not required for me to make that finding. I'm finding that the jurisdictional issue resolves the case. Had he made that finding, he's stuck with the record before him. And on the record before him, the question is, okay, whose burden is it to tell me where the officer was? I mean, where were your feet planted? Were they planted in Springfield property? Were they in Southernview? If an officer is in his own jurisdiction, it's not going to be an issue because he knows I'm within my own jurisdiction. When an officer is outside of his jurisdiction, the municipality that pays him, it behooves him to know exactly where he is and then introduce evidence that even though I wasn't in the municipality that pays me, I now am going to try and get in some evidence to show that an exception applies. But they didn't do that. They just decided to let it go. So we're left with the record before us. And the record before us is there isn't any. Now what they try to do is they say, well, we've got this map that shows the Bank of Springfield as though the Bank of Springfield somehow can only exist in Springfield proper. Or her testimony that I got off the interstate and headed into Springfield to use the restroom as though that somehow implies that she knew she was heading to Springfield Municipal proper as opposed to wherever else she was. There wasn't evidence. And that failure, because it's the state burden, that failure is a problem for the state, not for the defense. Or I guess I'm still the defense even though I'm the deputy. I'm not used to being that guy. The final point I want to make is on the issue of the refusal. Normally the court doesn't make credibility and factual determinations at this level, and I recognize that. However, this is a situation where the record before the court is absolutely clear. And I've laid out in my brief the testimony from Ms. Reynolds about her efforts to take this breath test. You can see what was going on between Ms. Reynolds and this officer. The officer then testifies that when she attempted to blow into the machine, the words insufficient came up on the breath test machine that he was borrowing. And then he said, well, no, it wasn't insufficient. It said inadequate sample. And then he said following that it said void. And then he was impeached with the manual from the machine, and it clearly says that when you are initially blowing, it will be a single plus sign. And that if you blow a sufficient sample, it goes to a double plus sign, and then you get the breath test result. And if you don't blow a sufficient sample, it goes from a single plus sign to the words no go. It would never say insufficient sample. So if the officer was using the breath test machine properly, or if he was telling the truth, it would have said no go. So you have a clear situation. This isn't where I'm trying to read body language or determine truth based on demeanor. This is just cold words on paper. Officer says, if you do this, it would have said X. And as it turns out, if you do this, it would have said Y. And we can look at that testimony alone and say they did not lay the foundation for a refusal. We don't need to send this back because we can make this determination based on the words. And I recognize that that would be making a determination based on some other grounds. I asked the trial court to make additional factual findings, and the trial court said I don't need to. I've got one. It's the jurisdictional issue. It's over. I wish we had additional findings so I'd be briefing this once and not maybe twice. But I certainly can't complain about the result from the lower level. So your position is that if the stop took place in an unincorporated area, then obviously that's not within a municipality, an adjoining municipality. I believe the state would concede. If this was one of those unincorporated pockets, then it's absolutely clear that the state loses. Any questions? No. Thank you. Rebuttal, Mr. Majors? So that's my question, Mr. Majors. If it's an unincorporated area, do you lose? Yes, in general, Your Honor. But I think then if you look at, I'll call it 1073 or whatever it is, 1037, there is a vague phrase in there. I think it's number two. It talks about a misdemeanor being committed in the officer's presence. And at the time a lot of these cases came about, speeding was a petty offense or no offense, which reverted down to being a petty offense. But now I think it's a Class B misdemeanor. But in general, I think, yes. I just have a couple of points here. One, if the permission of the chief of police is required, Cravens or Cathers was the chief of police. But not at the time of the stop. Well, they say we didn't prove it at the time of the stop, but he did say he was the chief of police when he testified. So that's another matter that could be remanded back to the trial court. The other thing was it's where the officer's feet are planted. There's plenty of cases out there. It doesn't matter where the officer is as long as he sees the offense being committed or determines an offense is being committed in his jurisdiction. So he could be in a helicopter and see somebody committing a crime in Southern View and still arrest the person. So there are a lot of cases that confuse this with where the officer is. It doesn't matter where the officer is. It matters where the arrestee is, where the alleged crime occurred. But the trial judge did find that the crime occurred, speeding occurred in Springfield. The officer was in Springfield, which I think he's wrong about that, but he decided the officer was in Springfield and the stop was in Springfield. That is either the judge's finding or reasonable inference of the judge's finding. If you all want to take judicial notice of where these boundaries are, it's fine with me. I don't think this should be turned into a trial court, but it would be a big improvement from what I've experienced, so I'll agree to it. If you want to decide whether or not you refuse, go ahead. But I think, again, this is a matter that should be remanded back for a judge who heard the evidence. Any other questions? No. Thank you. We'll wait until the next case. Take this one under advisement.